**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 52871**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Opinion Filed: August 11, 2026** |
| Plaintiff-Respondent, | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| v. | ) | |
| | ) | |
| JEREMY BRAD BAUER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cynthia Yee-Wallace, District Judge.

Judgment of conviction for lewd conduct with a child under the age of sixteen years, <u>vacated</u> and <u>case remanded</u>.

Silvey Law Office, LTD; Greg S. Silvey, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Neil Paterson, Deputy Attorney General, Boise, for respondent.

_____

PETTY, Judge

Jeremy Brad Bauer appeals from his judgment of conviction for lewd conduct with a child under the age of sixteen years. Bauer argues that the district court committed fundamental error by failing to provide a specific unanimity jury instruction. For the reasons set forth below, we vacate Bauer's judgment of conviction and remand the case for proceedings consistent with this opinion.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The victim's mother and Bauer were in a romantic relationship for approximately eight years, beginning in late 2015. In March or April 2016, the victim, her siblings, and their mother moved into Bauer's home. After the relationship between the victim's mother and Bauer ended in mid-2023, the victim, her siblings, and their mother moved out of Bauer's home. In December 2023, the victim's sister noticed that the victim was eating less and seemed to be

1

struggling with depression. When questioned, the victim disclosed to her sister and mother that Bauer had been sexually abusing her. The victim's mother called law enforcement and reported the abuse.

Bauer was subsequently indicted by a grand jury for three counts of lewd conduct with a child under the age of sixteen years, Idaho Code § 18-1508. Count I of the indictment alleged manual-to-genital contact; Count II alleged manual-to-genital and oral-to-genital contact; and Count III alleged genital-to-genital, manual-to-genital, and oral-to-genital contact. The State organized the counts primarily based on location of the alleged conduct: Count I occurred at the victim's mother's apartment; Count II occurred within Bauer's home; and Count III occurred in Bauer's vehicle. The case proceeded to trial.

At trial, the victim testified that the first incident happened at her mother's apartment in Boise while her mother was on a trip. At this time, the victim was approximately six years old. Bauer had come to take care of the victim and her siblings. The victim testified that after her siblings fell asleep, Bauer pulled a blanket over himself and the victim, pulled the victim's pants and underwear partially down, and touched the victim's vagina. Bauer covered the victim's mouth, told her to be quiet, and asked her if "it felt good." Bauer then pulled his pants down, placed the victim's hand on his penis, and moved her hand "up and down." Bauer told the victim to keep what happened a secret.

The victim then testified about incidents of sexual abuse that occurred at Bauer's home. The family often had "movie nights" where the children, their mother, and Bauer would watch movies together on the living room couch. The victim testified that during movie nights, once everyone had fallen asleep, Bauer would "reach his hand over under the blankets and put his hands inside my pants." Bauer would then move his fingers "in small circles" on the victim's vagina. Bauer would also put the victim's hands inside his pants "on his private part" and move her hand "in an up and down motion."

The victim testified that on one occasion, outside the upstairs bathroom, Bauer "pulled down his pants and put my mouth on his private parts." The victim described that Bauer moved her head "up and down" and described "white stuff" that came out of Bauer's penis and got "all over my hair and my face." The victim described another incident that occurred in the crawl space of Bauer's home. The victim testified that during this incident, Bauer took off both of their clothes and engaged the victim in mutual oral sex. The victim also testified that "[e]very night when

2

everyone would go to sleep, [Bauer] would come in my room and take me" into the spare bedroom. In the spare bedroom, Bauer would kiss the victim, put his hands and mouth on the victim's vagina, and have the victim do the same to Bauer's penis. The victim testified that during one incident in the spare bedroom, Bauer attempted to put his penis inside her vagina but stopped because she told him it hurt. On another occasion, the victim testified that when she and Bauer were alone in the hot tub, Bauer put his fingers on her vagina and put her hands on his penis.

The victim also described an incident when she and Bauer drove to a gas station in his vehicle and on the way back, Bauer parked near a field, had the victim get into the backseat of his vehicle, and then forced the victim to give him oral sex. The victim testified that Bauer again tried to put his penis inside her vagina but stopped because the victim said "ow" and had tears in her eyes.

Bauer testified in his defense and denied ever inappropriately touching the victim. At the conclusion of the trial, the district court did not give a specific unanimity instruction for Count II, and Bauer did not object to the lack of such an instruction or request one. The jury found Bauer guilty of Count II and not guilty of Counts I and III. Bauer appeals.

## II.

## STANDARD OF REVIEW

Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993).

## III.

## ANALYSIS

Bauer argues that the district court committed fundamental error by failing to provide a specific unanimity jury instruction for Count II because "a specific unanimity instruction is required when there is evidence of different acts that could constitute the [charged] crime." The evidence at trial showed that multiple discrete acts constituting the crime charged in Count II were committed in Bauer's home. The State argued to the jury that it could convict Bauer on Count II for any of the discrete acts that occurred in five areas of Bauer's home: the living room; the spare bedroom; the crawl space; the bathroom; and the hot tub. On appeal, the State concedes the first

3

two prongs of the fundamental error analysis have been established:  (1) Bauer was entitled to a specific unanimity instruction for Count II; and (2) the error is clear from the record.  However, the State argues Bauer has failed to establish the third prong of the fundamental error analysis because Bauer was not prejudiced and a specific unanimity instruction would not have changed the outcome at trial.

Generally, issues not raised below may not be considered for the first time on appeal.  *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992).  However, when a defendant alleges that a constitutional error occurred at trial and the alleged error was not followed by a contemporaneous objection, the claim of error must be reviewed under the fundamental error doctrine.  *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019).  In order to obtain relief under the fundamental error doctrine, the defendant must demonstrate three things.  First, the defendant must show that one or more of the defendant's unwaived constitutional rights were violated.  *Id.*  Second, the error must be clear and obvious, meaning the record must demonstrate evidence of the error and evidence as to whether or not trial counsel made a tactical decision in failing to object.  *Id.*  Third, the defendant must demonstrate that the error affected the defendant's substantial rights, which means the error identified in the first and second prongs of the test actually affected the outcome of the trial.  *Id.* at 119-20, 443 P.3d at 133-34.

Where there is trial evidence of more than one discrete act that could constitute the charged crime, a unanimity instruction is used to tell the jury that they must find a defendant guilty beyond a reasonable doubt based on a single agreed upon incident, thus ensuring the defendant has a unanimous jury verdict.  *State v. Montoya*, 140 Idaho 160, 167, 90 P.3d 910, 917 (Ct. App. 2004).  A trial court is required to give a unanimity instruction where there is evidence of more criminal acts than have been charged, regardless of whether the instruction has been requested by the defendant.  *Id.*

At trial, the State presented evidence of multiple acts that could form the basis for the oral-to-genital and manual-to-genital contact charged in Count II.  We agree Bauer has established the first two prongs of the fundamental error analysis.  Thus, we need only analyze the third prong--whether Bauer has demonstrated that the error affected the outcome of the trial.

Bauer argues the failure to give a specific unanimity jury instruction is reversible error because the jury acquitted him on Counts I and III, which required the jury to agree that a single act occurred in a specific location.  Bauer argues the jury only found him guilty on Count II

because, without a specific unanimity instruction, there was "no reason for the jury to believe they would all need to agree on a specific instance of lewd conduct." Bauer further argues that had the jury been instructed that it was required to agree on a specific instance, he would have been acquitted of Count II, as he was of Counts I and III.

The State argues that although "Bauer generally denied ever inappropriately touching [the victim]," much of the victim's testimony is "uncontradicted." The State asserts that this indicates the outcome of the trial would have been the same, even if a specific unanimity instruction had been given, since the jury could have found the testimony of the victim and her mother more credible than Bauer's testimony and agreed that he committed manual-to-genital contact.

Two cases are instructive here. In *Miller v. State*, 135 Idaho 261, 16 P.3d 937 (Ct. App. 2000), Miller filed a petition for post-conviction relief after he was convicted of two counts of lewd and lascivious conduct with a minor in his underlying criminal case.[1] Therein, Miller argued that his trial counsel's failure to request a unanimity instruction constituted ineffective assistance of counsel because the jury could have returned a non-unanimous verdict by agreeing that an act constituting the charge was committed, but disagreeing which specific incident occurred. *Id.* at 263, 16 P.3d at 939. Although Miller was only charged with two counts, the trial testimony revealed six separate incidents of lewd conduct. *Id.* at 267-68, 16 P.3d at 943-44. The district court summarily dismissed Miller's petition for post-conviction relief because the court found beyond a reasonable doubt that the jury would have reached the same result if it had been given a unanimity instruction as the jury plainly believed the victim by returning two unanimous guilty verdicts. *Id.* at 263, 16 P.3d at 939. Miller appealed. *Id.*

On appeal, this Court held it was error for the trial court to fail to provide the jury with a unanimity instruction, regardless of whether Miller requested the instruction or not. *Id.* at 267-68, 16 P.3d at 943-44. However, we then held that the error in failing to give the instruction was harmless for two reasons. *Id.* at 268, 16 P.3d at 944. First, the victim's testimony was uncontradicted. *Id.* Second, we concluded that the jury "obviously found" the testimony of the victim credible as they returned guilty verdicts on both counts. *Id.* Thus, had any single incident of lewd contact been relied upon as the basis for the charge, the jury would have found Miller guilty on that basis, rendering the lack of a unanimity instruction harmless. *Id.*

---

[1]     *State v. Miller*, 130 Idaho 550, 551, 944 P.2d 147, 148 (Ct. App. 1997).

In *Montoya*, 140 Idaho at 162, 90 P.3d at 912, Montoya was charged with three counts of lewd conduct with a minor child under sixteen. The counts were based on three different types of contact that occurred over a period of three years: (1) manual-genital contact; (2) oral-genital contact; and (3) genital-genital contact. *Id.* at 167, 90 P.3d at 917. At trial, the victim testified that each type of act occurred "several times with Montoya over that time period." *Id.* Montoya provided only a general denial of the alleged incidents and speculated that the victim was coached so she could live with her mother. *Id.* at 166, 90 P.3d at 916. Montoya was found guilty on all three counts. *Id.* at 162, 90 P.3d at 912. Montoya appealed, arguing the district court's failure to give a unanimity instruction was reversible error. *Id.* at 167, 90 P.3d at 917.

We held that although it was error to fail to give a unanimity instruction, the error was harmless because, by finding Montoya guilty as charged, the jury "obviously found [the victim's] testimony more credible than Montoya's testimony." *Id.* at 168, 90 P.3d at 918. We explained that because the jury returned a guilty verdict on all three counts, there was no reason to conclude the jury would have believed some of the incidents alleged by the victim, but not the others. *Id.* We concluded beyond a reasonable doubt that the jury would have found Montoya guilty of each count alleged, even if a unanimity instruction had been given, thus, any error was harmless. *Id.*

Here, like in *Miller* and *Montoya*, Bauer provided only a general denial of the victim's allegations. Had Bauer been convicted on all three counts, we could find the absence of a specific unanimity instruction harmless and conclude that the jury found the victim's testimony more credible than Bauer's testimony. But that is not what happened and is what distinguishes *Montoya* and *Miller* from this case. In this case, the jury acquitted Bauer of two counts and convicted him only on one count; thus, we cannot conclude the jury obviously found the victim's testimony more credible than Bauer's testimony.

Notably, the two counts the jury returned a not guilty verdict on were the two counts that the State argued the evidence supported a single incident in a single location. By contrast, when describing Count II during closing arguments, the State argued the following:

> We're now talking about the house. Talking about a different incident here now. *We know there [were] many instances that happened in the house.*
> . . . .
> So, again, we're talking for ease here about Count II, we're talking about conduct on the couch, we're talking about conduct in the spare bedroom, crawl space, the bathroom, the hot tub, and your corroboration of all those things.
> . . . .

6

If you believe her testimony, find her credible, check the box. Any one of those incidents *in that house*, any one of those locations, check the box.

(Emphasis added.) When there was evidence of only one incident that occurred in a single location, the jury acquitted Bauer of the charge. Therefore, unlike in *Miller* and *Montoya*, we cannot say beyond a reasonable doubt that, without a specific unanimity instruction, the jury agreed on any single incident when it found Bauer guilty on Count II. It is possible that, of the multiple incidents testified to, the jurors could not unanimously agree on a single incident occurring in a single location in the house, but that each juror could find that one of the incidents occurred. That is insufficient to sustain the guilty verdict.

Consequently, we cannot conclude that the jury found all of the victim's testimony credible or that the jury agreed on any single event occurring beyond a reasonable doubt with regard to Count II. As a result, the failure to give a specific unanimity jury instruction was not harmless error and we find that it was fundamental error. We vacate Bauer's judgment of conviction and remand the case for a new trial on Count II.

## IV.

## CONCLUSION

Based on the above, fundamental error occurred when the district court did not give the jury a specific unanimity jury instruction for Count II. Bauer's judgment of conviction is vacated, and the case is remanded for proceedings consistent with this opinion.

Chief Judge TRIBE and Judge FLEMING, **CONCUR.**

7